UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBIN BRIAN BURTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-15-1039-CG |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Robin Brian Burton brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 13, hereinafter "R. _"), and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his applications for DIB and SSI in January 2013, alleging disability beginning on November 1, 2011. R. 32, 188-200, 221. Following denial of his applications initially and on reconsideration, a hearing was held before an administrative law judge ("ALJ") on January 15, 2014. R. 25-121, 126-34, 137-42. In

addition to Plaintiff, Plaintiff's father and a vocational expert both testified at the hearing. R. 25-73. The ALJ issued an unfavorable decision on February 26, 2014. R. 6-24.

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 2011. R. 11. At step two, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder with psychotic features and "paranoid delusophenia."[1] R. 11. At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 11-13.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 13-17. The ALJ determined that:

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations:
>
> He can perform simple tasks (defined by the undersigned as unskilled work with a specific vocational preparation (SVP) of one or two). He must avoid contact with the public, but can engage in superficial contact with supervisors and coworkers (defined as brief and cursory contact).

R. 13. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. R. 18.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and

---

[1] The ALJ appears to have meant either "paranoid delusional schizophrenia" or "paranoid schizophrenia." *Compare* R. 11, *with* R. 305, 311, 313, 315, 317, 319, 330, 340, 343.

RFC—could perform. R. 18-19. Relying upon the vocational expert's testimony regarding the degree of erosion to the unskilled occupational base caused by Plaintiff's nonexertional limitations, the ALJ concluded that Plaintiff could perform unskilled, medium occupations such as machine packager, dishwasher, or hand packager, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 19. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 19-20.

Plaintiff's request for review by the SSA Appeals Council was denied. R. 1-3. The unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal

quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, it may not itself reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff challenges the ALJ's consideration of certain evidence in the record from Plaintiff's treating psychiatrist, Shantharam Darbe, MD. Plaintiff contends that the ALJ's assessment of Dr. Darbe's opinions was legally erroneous and failed to properly comply with the treating physician rule. *See* Pl.'s Br. (Doc. No. 19) at 12-21.[2] The Court agrees and finds that remand is required on this basis.

A. *The Relevant Record*

The record evidence pertaining to Plaintiff's psychiatric condition reflects that he received mental health treatment throughout the November 2011 to February 2014 disability period. *See* R. 283-301 (Ex. 1F), 302-04 (Ex. 2F), 305-20 (Ex. 3F), 321-25 (Ex. 4F), 327-32 (Ex. 6F), 333-45 (Ex. 7F).[3]

In late October 2011, Plaintiff presented to a Midwest City emergency room with paranoia and suicidal ideations. Dr. Darbe, who had referred Plaintiff to the emergency department and was noted to be Plaintiff's primary care physician, admitted Plaintiff to the hospital for mental health evaluation. *See* R. 284-96. Plaintiff's chief complaint was suicidal

---

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's ECF system.

[3] Although Dr. Darbe referred to Plaintiff being his patient since 2000 or 2008, the record before the Court contains evidence dating back only to October 2011. *See* R. 336, 342.

4

ideation, and his admitting diagnosis was bipolar I disorder; Dr. Darbe also noted his clinical impressions of "Acute mania with delusions" and "Suicidal ideation, possible." R. 283, 289-91. Dr. Darbe ordered that Plaintiff continue taking his antipsychotic medication and also prescribed medications for bipolar disorder and anxiety. R. 284-85. The records indicate that Plaintiff was hospitalized overnight and then discharged to his parents' house. R. 284. Dr. Darbe, Plaintiff, and Plaintiff's family also agreed that Plaintiff and his parents would begin to visit Dennis Ferguson, PhD (a psychologist in practice with Dr. Darbe) at least once per month. R. 284.

Plaintiff attended counseling sessions with Dr. Ferguson twice, in December 2011 and in January 2012. *See* R. 302, 303. Dr. Ferguson noted abnormalities in Plaintiff's speech, mood, affect, judgment, and insight. R. 302, 303. At both visits, Dr. Ferguson diagnosed Plaintiff as having bipolar disorder with psychotic features. R. 302, 303.

Plaintiff otherwise was treated exclusively by Dr. Darbe during the relevant disability period. *See* R. 305-25, 333-45. Following his hospital admission in October 2011, Plaintiff was examined in person by Dr. Darbe at least fourteen times. R. 305, 307, 311, 313, 315, 317, 319, 327, 329, 330, 335, 340, 343, 345. Plaintiff also was prescribed multiple antipsychotic, anxiolytic, and antidepressant medications by Dr. Darbe. Dr. Darbe consistently diagnosed Plaintiff as having paranoid schizophrenia. R. 305-07, 309-19, 327-30, 334-35, 337-45.

In July 2012, Plaintiff reported to Dr. Darbe that he had attempted suicide while his parents were away on vacation. R. 315 (noting that Plaintiff exhibited "no remorse about suicide attempt"). The next month Plaintiff reported that he was still isolating himself and

5

was wearing women's underwear. R. 313, 314. In July and August 2012, Dr. Darbe noted that Plaintiff reported feeling better but also noted a decline in Plaintiff's affect, judgment, and insight as compared to his previous visits. *See* R. 313, 315, 317, 319. In November 2012, Plaintiff's mother visited Dr. Darbe's clinic to report that Plaintiff had thrown a large pot of boiling water at her and that she was staying at a friend's house out of fear. R. 308.

In March 2013, Plaintiff reported that he had hit his mother in the head with a can of soda and that he was experiencing hallucinations as well as an increasingly frequent and more violent temper. R. 330. Dr. Darbe referred Plaintiff to a group home, where Plaintiff stayed for a short while. R. 328, 330, 345; *see also* R. 33-34, 39, 60-61. Plaintiff continued to be seen by Dr. Darbe, who at times noted Plaintiff's poor hygiene and weight gain, as well as abnormalities in Plaintiff's appearance, speech, mood, affect, insight and judgment, thought, memory, and attitude. R. 327, 335, 340, 343, 345. In June 2013, Plaintiff reported to Dr. Darbe that he "[c]an't . . . keep a job" and that all of his jobs have been of six months' duration or less. R. 344. Dr. Darbe noted in July 2013 that Plaintiff was suffering from both delusions and auditory hallucinations. R. 343.

On January 29, 2013, Dr. Darbe completed a Mental Residual Functional Capacity Assessment ("MRFCA") concerning Plaintiff. R. 321-25 (Ex. 4F). On Part I of this form, Dr. Darbe opined that Plaintiff was "Markedly Limited" in his abilities:

- To work in coordination with or proximity to others without being distracted by them;
- To accept instructions and respond appropriately to criticism from supervisors;
- To get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- To maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;

6

- To respond appropriately to changes in the work setting;
- To travel in unfamiliar places or use public transportation; and
- To set realistic goals or make plans independently of others.

R. 321-22. Dr. Darbe opined that Plaintiff was "Moderately Limited" in his abilities:

- To understand and remember detailed instructions;
- To carry out detailed instructions;
- To sustain an ordinary routine without special supervision;
- To complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- To interact appropriately with the general public; and
- To be aware of normal hazards and take appropriate precautions.

R. 321-22. Dr. Darbe annotated his opinion with the following: "Robin has had a difficult time obtaining and keeping a job. He lives with his parents and cannot function independently. Has 10-12 jobs in the past. He didn't stay very long (more than 6 months) at his work place. Cannot function with-out the supervision of his parents." R. 322.[4]

In September 2013, Dr. Darbe issued an opinion letter, stating:

[Plaintiff] was initially diagnosed with Major Depression, but over time his depression resolved, he became manic and was admitted to Midwest City Hospital. His diagnosis at that time was changed to Bipolar Disorder, Manic. [Plaintiff] was treated for this disorder; however, he continued to decompensate and was finally diagnosed with Schizophrenia, Paranoid Type. He has been suicidal, very aggressive toward his mother, and isolates in his room, refusing to come out. He refuses to perform his activities of daily living. [Plaintiff] cannot function independent[ly] of his parents. They provide all care, resources, food, housing, and insurance.

R. 336.

---

[4] This paragraph was handwritten in Section II of the form (which is reserved for explanation of any insufficient documentation) rather than in Section III, where the physician is directed to elaborate upon the findings reached in Section I. *See* R. 322-23.

At the hearing on his benefits applications, Plaintiff testified regarding his previous jobs, his suicide attempt and time at the group home, his infrequent bathing and toothbrushing, and his current medication and daily activities. R. 33-54. Plaintiff's father testified that Plaintiff has always lived in his parents' house and that Plaintiff's parents are afraid to leave him alone for too long due to Plaintiff's "dramatic change in personality" since 2011 and his "frequent" references to suicide. R. 55-64.

B. *The Treating Physician Rule*

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a), 416.902, .913(a) (2013). The Commissioner generally gives the highest weight to the medical opinions of a "treating source," which includes a physician who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* §§ 404.1502, .1527(c), 416.902, .927(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

When considering the medical opinion of a claimant's treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician is given such weight if it is both well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996));

8

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

A treating physician opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *4. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5).

*C. The ALJ's Decision*

9

In reaching his determination of Plaintiff's RFC, the ALJ summarized the October 2011 hospitalization records, including Dr. Darbe's evaluation, as well as Dr. Darbe's 2012-2013 treatment records. R. 16-17 (citing Exs. 1F, 3F, 6F, 7F). The ALJ assigned the opinions in the hospitalization records "some weight," finding that they were "generally consistent with the substantial evidence of record." R. 16. The ALJ assigned the opinions in Dr. Darbe's treatment records "partial weight." R. 16-17.

As to the opinions in Dr. Darbe's January 2013 MRFCA and September 2013 letter, the ALJ assigned the former "no weight," stating:

> In restricting the claimant from work requiring contact with the public and no more than superficial interaction with co-workers or supervisors, the undersigned also gave no weight to [the MRFCA] completed by Dr. Shantharam Darbe on January 29, 2013. . . . .
>
> Doctor Darbe is a treating physician and certain aspects of his opinion regarding the claimant's inability to deal with the public or perform detailed tasks are in fact consistent with the substantial evidence of record. However, his opinion that the claimant is unable to function independently is internally inconsistent with the degree of limitations he indicated on the form, as he marked no limits with performing simple instructions only mild limits in attention and concentration for extended periods. This does not support a conclusion that the claimant is disabled within the meaning of the Social Security Regulations. Furthermore, the issue of disability is an opinion on an issue reserved to the Commissioner. Therefore, the opinion is not entitled to controlling weight or special significance (SSR 96-5p). Additionally, Dr. Darbe's opinion that the claimant is unable to function independently does not support a finding of disability for purposes of the Social Security Regulations as such symptoms do not automatically presume a finding of an inability to do basic work activity. It is also inconsistent with the claimant's own reported capabilities. The claimant indicated that he was capable of performing some activities independently, such as leaving the house, doing his laundry and mowing the lawn. He just chose not to.

R. 17.

*D. Discussion*

Plaintiff objects that the ALJ erred in his treating-physician analysis by failing to provide good reasons for rejecting certain of Dr. Darbe's opinions in the MRFCA and by failing to adequately evaluate the MRFCA under the relevant regulatory factors. According to Plaintiff, the ALJ's focus upon Dr. Darbe's specific statement that Plaintiff is unable to function independently resulted in Dr. Darbe improperly ignoring and implicitly rejecting other opinions contained within the MRFCA without providing valid reasons for doing so. *See* Pl.'s Br. at 12-21.

As noted, the ALJ declined to give the MRFCA controlling weight, or any weight at all, because: (1) Dr. Darbe's statement that Plaintiff "cannot function independently" (on page 2 of the form) was inconsistent with Dr. Darbe's conclusion that Plaintiff was not limited in carrying out "very short and simple instructions" (page 1) and was only mildly limited in maintaining attention and concentration for extended periods (page 1); (2) Dr. Darbe's statement that Plaintiff "cannot function independently" is an opinion on an issue reserved to the Commissioner; (3) Dr. Darbe's statement that Plaintiff "cannot function independently" "do[es] not automatically presume a finding of an inability to do basic work activity"; and (4) Dr. Darbe's statement that Plaintiff "cannot function independently" is inconsistent with Plaintiff's own reported capabilities. R. 17. This analysis is flawed in various respects, as outlined below.

First, even if the MRFCA was not entitled to controlling weight,[5] the ALJ was "not free to simply disregard the opinion." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory *medical* evidence." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis added) (internal quotation marks omitted); *see also Watkins*, 350 F.3d at 1301 (explaining that if an ALJ rejects a treating physician's opinion, he or she "must then give specific, legitimate reasons for doing so" (internal quotation marks omitted)); *cf.* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (prescribing that the RFC assessment must cite "specific medical facts" as well as nonmedical evidence). With the exception of two counseling visits with Dr. Ferguson, Plaintiff exclusively relied upon Dr. Darbe for his mental health treatment, and Dr. Darbe's treatment records and MRFCA comprise nearly all of the medical evidence in the record. The ALJ elsewhere in his decision discussed the opinions of two nonexamining state-agency psychologists and assigned them "some weight," but the ALJ did not cite any contradiction with these opinions as a basis for rejecting Dr. Darbe's MRFCA. R. 17. And relevant to one aspect of Dr. Darbe's opinion, the ALJ states that such opinion is inconsistent with other findings by Dr. Darbe, but—as discussed below—that supplies no proper basis to reject the remainder of the MRFCA. Therefore, the ALJ "failed to sufficiently highlight how the treating physician's evaluations were inconsistent with the other medical evidence presented in the record." *Hamlin v.*

---

[5] Plaintiff focuses his claims of error on the second prong of the treating physician rule and his criticism of the ALJ's assignment of no weight to Dr. Darbe's MRFCA. *See* Pl.'s Br. at 12-21. Thus, the Court has also focused on that analysis.

*Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004); *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (holding that ALJ's effective rejection of a psychologist's findings was erroneous when the findings were "not opposed by those of any other medical source, much less a treating source" and ALJ did not find that the findings were inconsistent with other evidence from that psychologist or elsewhere in the record); *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004).

Further, the ALJ does not adequately explain why he accepted certain opinions by Dr. Darbe and not others. Despite the ALJ's assignment of no weight to the MRFCA, the ALJ's RFC determination was consistent with certain findings within that form—i.e., that Plaintiff was moderately limited in his ability to interact appropriately with the general public and that Plaintiff was moderately limited with respect to detailed instructions. *See* R. 13, 321. To the extent that the ALJ adopted these findings of Dr. Darbe and rejected the others, he was required to explain his reasoning. *See Chapo*, 682 F.3d at 1292 (finding error where "the ALJ fully discounted the bulk of [the psychologist's] mental RFC limitations with no explanation at all as to why one part of his opinion was creditable and the rest was not"); *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others."); *Andersen*, 319 F. App'x at 718 (noting that if a treating physician's opinion is not afforded controlling weight, the ALJ is not free to "pick and choose which portions to adopt"). To be sure, the ALJ states that discrete aspects of the MRFCA are "consistent with the substantial evidence of record," R. 17, but the ALJ gives no insight into the facts on which that conclusion is based, such as *which* aspects and *which* evidence. This is not an explanation

that allows a reviewing court to discern the ALJ's reasoning.

Further, despite identifying discrete findings within Dr. Darbe's MRFCA, the ALJ collectively rejects the entire MRFCA based upon criticisms that apply only to specific findings. For example, the ALJ objects that Dr. Darbe's statement that Plaintiff "cannot function independent[ly]" is an opinion on an issue reserved to the Commissioner and does not direct a finding of disability. *See* R. 17 (citing SSR 96-5p, 1996 WL 374183 (July 2, 1996)). But the ALJ then appears to rely upon this objection as a basis to discount 20 findings as to Plaintiff's functional limitations that are separately set forth by Dr. Darbe in the MRFCA, despite those findings indisputably not opining on issues reserved to the Commissioner. *See* R. 17.[6] As a result, the ALJ failed to properly consider the prescribed regulatory factors in determining what weight Dr. Darbe's opinion should receive. Although the ALJ need not explicitly discuss each factor, "the record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen*, 319 F. App'x at 718; *see* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); SSR 96-2p, 1996 WL 374188, at *4.

---

[6] The Commissioner argues that the ALJ did not ignore or improperly reject Dr. Darbe's limitations findings because the ALJ recognized: "Dr. Darbe's opinion that Plaintiff could not function independent[ly] of his parents informed the psychiatrist's opinion about Plaintiff's ability to perform work-related activities." Def.'s Br. at 11. This construction of the written decision is overly speculative given that the ALJ repeatedly designated the "cannot function independently" statement as a separate conclusion rather than the foundation for numerous and diverse findings. *See* R. 17; *Haga*, 482 F.3d at 1207-08. And, in any event, such a view by the ALJ would not be supported by substantial evidence. *See* R. 321-23; *Robinson*, 366 F.3d at 1082-83.

14

Such consideration is not apparent from the written decision and its single-minded focus upon one statement of Dr. Darbe's. The most significant example of this lack of consideration is in regards to Dr. Darbe's finding that Plaintiff is markedly limited in his ability "to respond appropriately to changes in the work setting." R. 322. The ALJ specifically noted this finding but nevertheless failed to either evaluate it further or include any relevant restriction in the RFC determination. *See* R. 17 ("Dr. Darbe indicated marked limitations in the ability to . . . respond appropriately to changes in the work setting."). The basis for the ALJ's rejection of any RFC limitation regarding changes in work setting is particularly opaque given that the two state agency reviewing psychologists (whose opinions the ALJ gave "some weight") both found that Plaintiff was moderately limited in this ability. *See* R. 17, 83, 93, 106, 118. And this shortcoming undermines the ALJ's determination that Plaintiff retains the ability to perform unskilled work, as the basic mental demands of such work include the ability "to deal with changes in a routine work setting" "on a sustained basis." SSR 85-15, 1985 WL 56857, at *5 (Jan. 1, 1985); *see also* SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996) (prescribing that "[a] substantial loss of ability" to deal with changes in a routine work setting "on a sustained basis" "will substantially erode the unskilled sedentary occupational base and would justify a finding of disability"); *Haga*, 482 F.3d at 1208 ("[A] moderate impairment is not the same as no impairment at all . . . .").

The Commissioner implies that the RFC's limitation to unskilled work may be consistent with at least a moderate limitation in this respect, but the ALJ made no finding to that effect, and the cases the Commissioner cites do not establish that such consistency

15

is present in this case. *See* Def.'s Br. at 10 n.5 (first citing *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016); then citing *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015)); *Ringgold v. Colvin*, 644 F. App'x 841, 846 (10th Cir. 2016). In *Smith*, the Tenth Circuit found that the ALJ's RFC determination incorporated certain functional limitations, including a moderate limitation in ability to respond appropriately to changes in the workplace, when the ALJ concluded that the claimant could engage only in "simple, repetitive, and routine tasks." *See Smith*, 821 F.3d at 1269. The RFC determination here contains no such refinement of unskilled simple work to "particular kinds of work activity," such as routine or repetitive tasks, that would conceivably take into account Plaintiff's problems with adaptation. *Id.*; *see* R. 13; 20 C.F.R. §§ 404.1521(b)(3), (6), 416.921(b)(3), (6) (defining abilities regarding simple instructions as separate from the ability to "[d]eal with changes in a routine work setting"); *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1150 (D. Colo. 2015) (holding that ALJ erred by equating the ability to perform simple, repetitive tasks with the ability to perform unskilled work). And in *Vigil*, the Tenth Circuit held that "the ALJ accounted for [the claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work." *Vigil*, 805 F.3d at 1204. But the Tenth Circuit did not indicate that a limitation in adaptation would likewise be accounted for in this manner. *See id.*; *see also Ringgold*, 644 F. App'x at 846 ("[A]lthough a limitation to unskilled work sometimes may account for a claimant's mental limitations, it typically does not."); *Gonzales v. Colvin*, 213 F. Supp. 3d 1326, 1331-32 (D. Colo. 2016) (declining to read the ALJ's limiting of the claimant to unskilled work as an attempt to incorporate a moderate limitation in ability to respond appropriately to changes in the work setting

because "an inability to adapt to changes in the workplace is inconsistent with the most fundamental demands of unskilled jobs").

E. *Summary*

For these reasons, the Court is unable to conclude that ALJ's stated assignment of "no weight" to Dr. Darbe's MRFCA was based upon proper, legitimate reasons as required by the treating physician rule. *See McGoffin*, 288 F.3d at 1252; *Watkins*, 350 F.3d at 1301. The ALJ failed to follow the correct legal standards, or to provide a sufficient basis for the Court to determine that such standards have been followed, in considering the opinion of Plaintiff's treating physician. Remand is therefore required. *See Hamlin*, 365 F.3d at 1214; *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).[7]

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 11th day of September, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

---

[7] The Commissioner does not argue that any legal error committed by the ALJ in evaluating Dr. Darbe's opinion was harmless, and the Court cannot confidently find that the ALJ's treatment of the opinion was not prejudicial to Plaintiff or that "no reasonable administrative factfinder, following the correct analysis," could have evaluated the opinion in any other way. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (internal quotation marks omitted); *see Gonzales*, 213 F. Supp. 3d at 1333.